UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVAUGHN LOVE,<br><br>　　　　　　　　　Petitioner,<br><br>v.<br><br>RAYMOND MADDEN, et al.,<br><br>　　　　　　　　　Respondents. | Case No.: 20-CV-447 JLS (DEB)<br><br>**ORDER: (1) SUSTAINING IN PART AND OVERRULING IN PART PETITIONER'S OBJECTIONS, (2) ADOPTING REPORT AND RECOMMENDATION, (3) DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND (4) DENYING CERTIFICATE OF APPEALABILITY**<br><br>(ECF Nos. 1, 12, 13) |

Presently before the Court are Petitioner Davaughn Love's ("Petitioner") Petition for Writ of Habeas Corpus ("Pet.," ECF No. 1), Respondent Raymond Madden's ("Respondent") Answer thereto ("Answer," ECF No. 7), Respondent's Notice of Lodgment ("Lodgment," ECF No. 8), and Petitioner's Traverse ("Traverse," ECF No. 11). Also before the Court is Magistrate Judge Daniel E. Butcher's Report and Recommendation ("R&R," ECF No. 12) advising the Court to deny the Petition, as well as Petitioner's Objections to the R&R ("Objs.," ECF No. 13) and Respondent's Reply to Petitioner's Objections ("Reply," ECF No. 14). Having carefully considered the Petition,

Magistrate Judge Butcher's R&R, the Parties' arguments, and the law, the Court **SUSTAINS** in part and **OVERRULES** in part Petitioner's Objections, **ADOPTS** the R&R, **DENIES** the Petition, and **DENIES** a Certificate of Appealability.

## BACKGROUND

Magistrate Judge Butcher's R&R contains a thorough and accurate recitation of the relevant facts and procedural history. *See* R&R at 2–3. However, given that Petitioner apparently objects to the R&R's recitation of the relevant facts, *see* Objs. at 2, this Court independently summarizes the key facts.

On the afternoon of January 21, 2019, Correctional Officer Beltran was conducting a security check at Centinela State Prison when he claimed to "detect[] a strong pungent odor of alcohol" from Petitioner's cell. Pet. at 17; *see also id.* at 30 (1st Rules Violation Report ("1st RVR") at 1). Correctional Officer Beltran signaled the control booth officer to open the door to Petitioner's cell, but the door would not open. Pet. at 17. Petitioner claims the door would not open because of electric problems. *Id.* Correctional Officer Beltran's 1st RVR states the door would not open "as Love held the door shut and stated 'there is nothing in here', and appeared to be securing the cell door with an inmate manufactured door stopper." 1st RVR at 1.

Correctional Officer Beltran indicated in his 1st RVR that he observed Petitioner reaching into his locker to retrieve a smart phone and a cell phone charger. Pet. at 18; *see also* 1st RVR at 1. Petitioner alleges "there is no evidence of this observation, nor was there evidence received from the toilet system from outside the prison that petitioner flushed any of these appliances down the toilet." Pet. at 18. The 1st RVR indicates that Correctional Officer Beltran again signaled the control booth officer to open to cell door, but the door still would not open because of the door stopper. 1st RVR at 1. The 1st RVR states that Correctional Officer Beltran then "observed as Love began to break the cell phone and flush it down the toilet." *Id.* According to the 1st RVR, Correctional Officer Beltran then successfully opened the cell door. *Id.* He ordered Petitioner to stop, but Petitioner did not obey and "was able to flush every piece of the cell phone and charge

[*sic*]." *Id.* According to Petitioner, Correctional Officer Beltran did not seek to recover the allegedly disposed of contraband. Pet. at 18.

Petitioner claims that Correctional Officer Beltran ordered Petitioner and his cellmate to exit the cell. *Id*. at 17. The 1st RVR claims that Petitioner's cell was "solely occupied by Inmate Love," and that Correctional Officer Beltran ordered Petitioner to exit the cell. 1st RVR at 1. Correctional Officer Beltran performed a clothed body search of Petitioner for contraband and weapons, which was negative. *Id.* While Correctional Officer Booth's partner "provided coverage," *id.*, Correctional Officer Beltran entered and searched Petitioner's cell, where he "allegedly discovered white lighting [*sic*] alcohol in a folger container," Pet. at 17–18. The 1st RVR indicates that Correctional Officer Beltran discovered approximately one gallon of inmate manufactured alcohol "in multiple coffee containers." 1st RVR at 1. Correctional Officer Beltran neither conducted a field test on the alleged alcohol nor preserved it for laboratory testing. Pet. at 18. The 1st RVR indicates that, "[b]ecause [Correctional Officer Beltran] ha[s] discovered Inmate Manufactured Alcohol on numerous occasions, [he] was able to identify the clear liquid substance to be inmate manufactured alcohol," and accordingly Correctional Officer Beltran disposed of the alcohol by flushing it down the toilet. 1st RVR at 1. Correctional Officer Beltran discovered no other contraband or weapons in Petitioner's cell. *Id.*

The 1st RVR, for possession of alcohol, was served on Petitioner on January 22, 2019. *See* Pet. at 34 (1st Disciplinary Hearing Results ("1st DHR") at 1). A second RVR, with a substantively identical recitation of the relevant facts, *see* Pet. at 45 (2d Rule Violation Report ("2d RVR")), for possession of a cellular phone, was also served on Petitioner on January 22, 2019, *see* Pet. at 49 (2d Disciplinary Hearing Results ("2d DHR") at 1).

A disciplinary hearing on both violations was held on January 27, 2019. *See* 1st DHR at 1; 2d DHR at 1. Petitioner pleaded not guilty to both violations and submitted a written statement, 1st DHR at 4; 2d DHR at 4, but the Senior Hearing Officer ("SHO") found Petitioner guilty as charged as to both violations "based on a preponderance of

evidence," 1st DHR at 5; 2d DHR at 5.  The SHO "considered the inmate plea and written statement," but found that "Officer A. Beltran's report . . . outweighs LOVE's claim of innocence."  *Id.*  Although the SHO found Petitioner's statement "compelling," the SHO noted that "[Petitioner] failed to provide any evidence which would outweigh the facts contained in the RVR to prove his innocence," providing "no evidence or mitigating circumstances to refute the reporting employee's written report."  *Id.*  The disposition for the alcohol possession violation was a credit loss of 120 days, plus other revoked privileges.  1st DHR at 5–6.  The disposition for the cell phone possession violation was a credit loss of 90 days, plus other revoked privileges.  2d DHR at 6.  At the conclusion of the hearing, Petitioner was advised of his right to appeal.  1st DHR at 8; 2d DHR at 8.  On February 5, 2019, the Chief Disciplinary Officer ("CDO") affirmed the hearing results on the alcohol possession violation.  1st DHR at 8–9.  On February 27, 2019, the CDO affirmed the hearing results on the cell phone possession violation.  2d DHR at 8–10.

      On April 17, 2019, Petitioner's Second Level Appeal Response was denied.  Pet. at 19; *see also* Pet. at 60 (2d Level Appeal Response ("2d LAR") at 1).  Petitioner claimed that the two RVRs impermissibly "stacked" charges derived from the same incident, and that there was no evidence to suggest that the substance discovered in his cell was alcohol.  2d LAR at 1.  As to Petitioner's evidentiary arguments, the 2d LAR noted that "the institution is not obligated to test (field or lab) the alcohol as it is not classified as a controlled substance."  *Id.* at 3.  Thus, "[t]he verification by the RE that the substance is actually alcohol is sufficient evidence to support a guilty finding for 'Possession of Alcohol' to a preponderance of evidence threshold."  *Id.*  Ultimately, the 2d LAR concluded that "[t]he SHO's findings are consistent with the evidence and substantiate the charge to preponderance threshold," and "appellant was provided appropriate due process and administrative protections."  *Id.* at 4.  As to the stacking issue, the 2d LAR concluded that there was no clear nexus between the cell phone and alcohol possession infractions, and accordingly finding Petitioner guilty on both RVRs and imposing separate credit losses was not "stacking."  *Id.* at 3–4.

Petitioner's Third Level Appeal Decision, dated July 12, 2019, also denied Petitioner's appeal. Pet. at 69 (3d Level Appeal Decision ("3d LAD") at 1). Petitioner again requested dismissal of the RVRs due to failure to test the alleged alcohol and allegedly impermissible stacking. 3d LAD at 1. Again, as to Petitioner's evidence-based arguments, the 3d LAD stated:

> The examiner thoroughly reviewed all documents relative to the appellant's RVRs and finds that the Senior Hearing Officer found the appellant guilty based upon a preponderance of evidence and assessed a credit loss commensurate with the credit forfeiture schedule. The TLR finds that the appellant was afforded all the required due process protections and all time constraints were complied with.

*Id.* As to the stacking issue, the 3d LAD noted that, "[a]lthough multiple violations may be related to an original event, violations without a nexus may be reported individually," and concluded "that Centinela State Prison (CEN) staff acted appropriately" in finding no stacking. Lodgment Ex. 8 at 1–2.[1]

On August 8, 2019, Petitioner filed a petition for writ of habeas corpus in the Superior Court of California. Pet. at 76 (Order Denying Petition for Writ of Habeas Corpus ("Sup. Ct. Order") at 1). As to Petitioner's arguments concerning the sufficiency of the evidence, the Superior Court concluded that "there is some evidence in the record that could support the conclusion reached by the disciplinary board"—namely, the RVRs, "which indicate[] that the officer detected a 'strong pungent odor of alcohol' and that the officer noted he had discovered inmate manufactured alcohol on numerous occasions and identified the substance found in Petitioner's cell as inmate manufactured alcohol." Sup. Ct. Order at 1. The Superior Court also noted that Petitioner's argument that the RVR for possession of a cell phone was erroneous "was not raised in the administrative appeals until the third level" and thus unexhausted. *Id.* at 2. Finally, the Superior Court determined that

---

[1] The 3d LAD submitted by Petitioner as an exhibit to his Petition appears to be missing the second page; accordingly, the Court refers to the Notice of Lodgment for the second page.

Petitioner did not meet his heavy burden to plead sufficient facts to establish that the two rules violations were impermissibly stacked, as the two violations were not related "beyond the fact that the possession of the separate types of contraband were discovered in the same cell search." *Id.*

Petitioner subsequently appealed to the Court of Appeal. Pet. at 80 ("App. Ct. Order" at 1). Again, the Court of Appeal found that "[Petitioner] has not established the evidence was insufficient to support the disciplinary decisions." App. Ct. Order at 2. The Court of Appeal concluded that "[t]he written report of the prison guard, who searched Love's cell and found what his experience caused him to recognize as inmate-manufactured alcohol and who saw Love retrieve and dispose of a cellular telephone and charger, constitutes 'some evidence' to support the disciplinary hearing officer's findings that Love violated regulations." *Id.* "Petitioner's claims that the violations were fabricated and that the contraband was not photographed or tested do not change this outcome—there is some evidence, even if there is evidence to support Petitioner's claims of innocence." *Id.* As to the stacking issue, the Court of Appeal noted:

> [A]lthough the alcohol and cellular telephone were found during the same search, the violations did not involve an escalation of one form of misconduct into a more serious form; and there is no necessary connection between the two violations, since either could have occurred without the other. Love violated two distinct regulations and was appropriately charged with and punished for both violations.

*Id.* Thus, the Court of Appeal also denied the petition. *Id.* at 3.

The Supreme Court of California summarily denied Petitioner's petition on January 22, 2020. *See* Pet. at 84 ("Supreme Ct. Order"). On March 9, 2020, Petitioner filed the instant Petition in this Court. *See generally* Pet. Respondent answered on June 25, 2020, *see generally* Answer, and Petitioner filed his traverse on September 8, 2020, *see generally* Traverse.

/ / /

/ / /

On October 16, 2020, Magistrate Judge Butcher issued his R&R. *See generally* R&R. Petitioner timely filed his Objections on October 29, 2020, *see generally* Objs., and Respondent filed a timely reply on November 13, 2020, *see generally* Reply.

## LEGAL STANDARD

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district court's duties in connection with a magistrate judge's report and recommendation. The district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989). In the absence of timely objection, however, the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note (citing *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974)).

## ANALYSIS

Liberally construed, the Petition raises two grounds for relief: (1) that the guilty findings of the RVRs fail to comply with the "some evidence" standard of *Superintendent v. Hill*, 472 U.S. 445 (1985); and (2) that the RVRs violate the California Department of Corrections and Rehabilitation's ("CDCR") "stacking" policy. *See* Pet. at 6, 17–20.

Magistrate Judge Butcher's R&R recommends that the Court deny the Petition. *See* R&R at 8. Magistrate Judge Butcher first determined that federal habeas jurisdiction is lacking, as Petitioner fails to state a cognizable claim for habeas relief. *See id.* at 4–6. However, Magistrate Judge Butcher further concluded that the Petition fails on the merits, as "some evidence" supported the RVRs. *See id.* at 6–7. Finally, Magistrate Judge Butcher determined that the Petition was not amenable to conversion to a Section 1983 action, as Petitioner failed to allege any personal conduct by Respondents Raymond Madden or Xavier Becerra to hold them liable under Section 1983. *See id.* at 7.

Petitioner raises four objections to the R&R. First, "Petitioner OBJECTS to the Magistrate Judge re-characterizing his Constitutional claim by rephrasing the claim and then addressing ONLY part of the claim and/or an entirely different claim then [sic] what was raised by the Petitioner, in his pleadings." Objs. at 1–2. Second, Petitioner apparently objects to the portion of the R&R that states "'that the Petition does not state a cognizable claim for [habeas relief]……Nettles control[s] here…'" Id. at 2 (quoting R&R at 4). Third, "Petitioner OBJECTS to the Magistrate's finding of fact based soley [sic] on the Respondent's Answer." Id. Petitioner claims the facts pleaded in the Petition "would have established that Nettles is misplaced here." Id. Finally, "Petitioner OBJECTS to the Magistrate's addressing claims not raised in Petitioner's § 2254 petition" and, apparently, the R&R's failure to address the "stacking" issue. Id. at 3. Specifically, Petitioner claims that "[t]he Magistrate's 'R & R' DOES NOT address the claim raised by the Petitioner," and "[]instead . . . states what the Respondent's [sic] argued." Id. Respondent filed a Reply, arguing that Petitioners Objections, which provide no new substantive argument or evidence to support his claims, should be overruled. See Reply at 2.

The Court reviews *de novo* those portions of Magistrate Judge Butcher's R&R to which Petitioner objects and reviews for clear error the remainder of the R&R.

## I. Petitioner's Objections

### A. "Findings of Fact"

As an initial matter, Petitioner's third objection seemingly objects to the way in which the R&R summarized the relevant facts. See Objs. at 2. For example, Petitioner argues that the R&R relied "solely on the Respondent's answer" and did not consider facts asserted by Petitioner, for example, the fact that Petitioner alleges that Correctional Officer Beltran fabricated the incident giving rise to the two RVRs. Id.

To remedy Petitioner's concerns, the Court has reviewed and summarized *de novo* the relevant facts and procedural history, presenting both Petitioner's arguments as well as the findings of fact reflected in the administrative and court records. See supra at 2–6. Accordingly, the Court **SUSTAINS** Petitioner's objection as to the R&R's factual

summary. However, the Court further notes that "[t]his Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence." *Ortiz v. Madden*, No. 18CV1058 LAB (MDD), 2018 WL 6601129, at *1 (S.D. Cal. Dec. 17, 2018) (citing 28 U.S.C. § 2254(e)(1); *Parle v. Fraley*, 506 U.S. 20, 35-36 (1992)), *report and recommendation adopted*, No. 18CV1058-LAB (JMA), 2019 WL 265128 (S.D. Cal. Jan. 18, 2019).

### B.   *Failure to State a Cognizable Habeas Claim*

Petitioner's second objection is to the R&R's finding that the Petition fails to state a cognizable claim for habeas relief and that the Ninth Circuit's decision in *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (en banc), controls here. *See* Objs. at 2. In part, Petitioner's fourth objection contends that the R&R addresses claim(s) not raised by Petitioner, presumably Respondent's argument that Petitioner's claims do not lie at the core of federal habeas corpus. *Id.* at 3.

As an initial matter, Respondent was entitled to raise the argument that federal habeas jurisdiction over Petitioner's claims is lacking. *See, e.g.*, *Nettles*, 830 F.3d 922 (state argued, and Ninth Circuit agreed, that habeas jurisdiction was lacking); *DeBose v. Madden*, No. 20-CV-1132-MMA(WVG), 2020 WL 7240294, at *2–3 (S.D. Cal. Dec. 9, 2020) (agreeing with respondent that habeas jurisdiction was lacking over petition). While Respondent's argument perhaps would have been raised more appropriately by a motion to dismiss rather than an answer, *e.g.*, *DeBose*, 2020 WL 7240294, at *1–2 (recommending granting of motion to dismiss where petition failed to raise cognizable habeas claim); *McCraw v. McDowell*, No. 17CV1106-LAB (BLM), 2017 WL 5973412, at *4 (S.D. Cal. Dec. 1, 2017) (same), *report and recommendation adopted*, No. 17CV1106-LAB (BLM), 2018 WL 378489 (S.D. Cal. Jan. 11, 2018), any defect in the way in which the argument was raised procedurally is irrelevant, as Petitioner had a full and fair opportunity to respond to the argument, *see* Traverse at 3–4, and this Court is nonetheless obligated to assess whether it has habeas jurisdiction over Petitioner's claims, *see, e.g.*, *Briggs v. Mayberg*, No. EDCV 08-554 DDP JWJ, 2009 WL 2568069, at *2 (C.D. Cal. Aug. 18, 2009) (citing

*Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000); *Cannon v. Thomas*, No. CIV 06-613-TUC-CKJ, 2009 WL 259415, at *1 (D. Ariz. 2009)).

The Court independently finds that, as in *Nettles*, Petitioner's claims fall outside the core of habeas relief. "[I]f a state prisoner's claim does not lie at 'the core of habeas corpus,' it may not be brought in habeas corpus but must be brought, 'if at all,' under § 1983." *Nettles*, 830 F.3d at 934 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973); *Skinner v. Switzer*, 562 U.S. 521, 535 n.13 (2011)). A claim lies at the core of habeas corpus if it disputes "the fact or duration of the conviction or sentence," *id.* at 934—in other words, if it would "necessarily lead to [the petitioner]'s immediate or earlier release from confinement," *id.* at 935 (citing *Skinner*, 562 U.S. at 535 n.13).

Even accepting as true Plaintiff's claim that Correctional Officer Beltran fabricated the incidents in question and assuming that, as a result, both RVRs should be expunged from Petitioner's record, "[s]uccess on the merits of [Petitioner]'s claim would not necessarily lead to immediate or speedier release because the expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole." *Nettles*, 830 F.3d at 934–35. Numerous courts within this Circuit have found on similar facts that the speculative effect of a loss of credits on a petitioner's minimum eligible release date and parole prospects, which are subject to myriad discretionary determinations, fails to state a cognizable claim for habeas relief. *See, e.g.*, *Nettles*, 830 F.3d at 934–35; *DeBose*, 2020 WL 7240294, at *2–3; *McCraw v. McDowell*, No. 17CV1106-LAB (BLM), 2017 WL 5973412, at *2 (S.D. Cal. Dec. 1, 2017), *report and recommendation adopted*, No. 17CV1106-LAB (BLM), 2018 WL 378489 (S.D. Cal. Jan. 11, 2018); *Tam Steve Nguyen v. Paramo*, No. 17CV521 WQH (NLS), 2017 WL 3309804, at *1–2 (S.D. Cal. Aug. 3, 2017), *report and recommendation adopted*, No. 17-CV-0521-WQH-NLS, 2017 WL 4272340 (S.D. Cal. Sept. 26, 2017); *Gomez v. Montgomery*, No. 18-CV-2607-CAB(WVG), 2019 WL 3034903, at *3–4 (S.D. Cal. July 11, 2019), *report and recommendation adopted*, No. 18CV2607-CAB-WVG, 2019 WL 3974069 (S.D. Cal. Aug. 22, 2019). Accordingly, to the extent Petitioner objects to the R&R's determination that

he fails to state a cognizable claim for federal habeas relief, the Court **OVERRULES** Petitioner's objection and **ADOPTS** the R&R's finding that Petitioner fails to state a cognizable claim for habeas relief on his due process claim.

### C.  *R&R's Re-Characterization of and Failure to Address Petitioner's Claims*

Petitioner's first objection is that the R&R "re-characterized" his claim and then addressed only part of his claim, or different claims than those raised in his pleadings. Objs. at 1–2. In a similar vein, Petitioner's fourth objection argues that the R&R "DOES NOT address the claim raised by the Petitioner." *Id.* at 3. The Court assumes this is a reference to the statement in the R&R that "Petitioner did not raise[] the argument that the two RVRs were impermissibly 'stacked' in this Petition," *see* R&R at 3 n.3, and the resultant absence of any analysis of the "stacking" argument in the R&R.

Construing the Petition liberally, the Court agrees that the Petition raises a "stacking" claim. Although the single ground for relief as stated in the Petition superficially raises only a single issue, "that the 'some evidence' application apply's [*sic*] in this case under Superintendent v. Hill (1985) 472 U.S. 445, and the case must be reverse [*sic*]," Pet. at 17, the supporting facts make clear that Petitioner contends that the two RVRs, "derived from the same incident," "are in direct violation of the stacking Memorandum Division," *id.* at 18–19. Both the Superior Court and the Court of Appeal analyzed this claim despite it being somewhat buried in the Petition. *See* Sup. Ct. Order; App. Ct. Order. Accordingly, the Court **SUSTAINS** Petitioner's objection that the R&R failed to fully analyze his claims on the merits.

Nonetheless, reviewing the merits of Petitioner's claims *de novo*, the Court concludes that Petitioner's claims nonetheless fail on the merits.

#### 1.  *Due Process Claim*

First, the Court finds that due process was satisfied here, as the disciplinary hearing results were supported by "some evidence." While the Court appreciates Petitioner's frustrations, ultimately, *Hill*'s "some evidence" standard is a low bar satisfied by the facts
///

before this Court. *See, e.g.*, *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) ("The *Hill* standard is minimally stringent.").

In order to satisfy due process, a prison disciplinary conviction must be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56 (citations omitted). "That evidence can even be characterized as 'meager' and still be constitutionally adequate." *Henry v. Cate*, No. 12-CV-1760-LAB-WMC, 2014 WL 197768, at *1 (S.D. Cal. Jan. 14, 2014) (citing *Hill*, 472 U.S. at 457).

Courts within the Ninth Circuit have found that a correctional officer's uncorroborated eyewitness testimony can be "some evidence" adequate to satisfy due process. *See, e.g.*, *Henry*, 2014 WL 197768, at *2 ("There is no constitutional requirement that the statement of Officer Sanchez be corroborated."); *Fernandez v. Gonzalez*, No. EDCV 13-0551-DDP RNB, 2013 WL 5325739, at *3 (C.D. Cal. Sept. 20, 2013) ("[T]he Court finds that it would not have been objectively unreasonable for the California courts to conclude that the SHO was entitled to find Officer Borboa's statements credible and base the determination of guilt solely on those statements. Officer Borboa's statements provided at least 'meager' evidence that petitioner had constructive possession of the cellular phone charger."). The SHO found, on a preponderance of the evidence, that Petitioner was guilty as charged as to both violations, finding that the facts and evidence contained in the RVRs outweighed Petitioner's not guilty plea and written statement. 1st DHR at 5; 2d DHR at 5. Thus, Correctional Officer Beltran's RVRs, which contain his personal observations of the violations, are "some evidence" to support the SHO's disposition. Petitioner's claims that the incident was fabricated and that the contraband should have been tested or documented were raised and considered, and do not change the ultimate fact that "some evidence" exists to support the disciplinary hearing results. It is

not the province of this Court to reweigh the evidence or the credibility of Correctional Officer Beltran and Petitioner. The Court is satisfied that the low bar for due process was satisfied here, and accordingly, the Court **ADOPTS** the R&R's recommendation that habeas relief is not warranted on the merits of Petitioner's due process claim.

          2.        *"Stacking" Claim*

The Court also finds that Petitioner is not entitled to relief on his "stacking" claim. As an initial matter, it is not clear that the Court has habeas jurisdiction over this claim. "Federal habeas review is limited to determining whether there has been a violation of the Constitution, laws, or treaties of the United States." *Rivera v. Chavez*, No. EDCV 11-1638-JAK JEM, 2013 WL 1010534, at *6 (C.D. Cal. Feb. 8, 2013) (citing 28 U.S.C. §§ 2254(a), (d)(1)), *report and recommendation adopted*, No. EDCV 11-1638-JAK JEM, 2013 WL 1010486 (C.D. Cal. Mar. 13, 2013). Other district courts within the Ninth Circuit have consistently found that such "stacking" claims fail to state a cognizable claim for federal habeas relief. *See, e.g.*, *McDonald v. Holland*, No. ED CV 14-2499-JAK E, 2015 WL 3967749, at *9 (C.D. Cal. May 15, 2015) ("Petitioner's claim that his disciplinary convictions and sentences violated state prison policies against 'stacking' does not state any cognizable claim for federal habeas relief." (citations omitted)), *report and recommendation adopted*, No. ED CV 14-2499-JAK E, 2015 WL 4018647 (C.D. Cal. June 30, 2015); *Rivera*, 2013 WL 1010534, at *6 (finding claim CDCR violated state statute prohibiting double jeopardy by "stacking" two RVRs "should be denied for failing to state a federal constitutional claim"); *Davis v. Haviland*, No. 2:10-CV-1029 KJM DAD, 2014 WL 794327, at *11 (E.D. Cal. Feb. 27, 2014) (where petitioner brought stacking claim, concluding "petitioner is not entitled to federal habeas relief on any claim that his disciplinary convictions violated either state law or California regulations governing prisons").

However, even assessing this claim on the merits, the Court finds the two RVRs were not impermissibly "stacked." Petitioner's claim relies on a 1993 California

/ / /

Department of Corrections[2] policy memorandum entitled "Clarification of 'Stacking' as Related to the Inmate Disciplinary Process." *See* Pet. at 71 ("Stacking Mem."). The Stacking Memorandum defines "stacking" "as charging an inmate with multiple violations (CDC Form 115s) for an event which warrants a single report." Stacking Mem. at 1. The policy "is that when an event starts with one type of misconduct and escalates to a point where a more serious violation occurs, the most serious of these consecutive or related violations will be the one charged," while "[t]he other actions shall be noted in the report as supporting evidence." *Id.* "In deciding which violation to charge, the reviewing authority should determine whether a nexus between the violations exists." *Id.*

The Stacking Memorandum provides an exemplary fact pattern to illustrate the policy. Part of the example involves an officer searching an inmate's property following an incident and discovering "an inmate manufactured weapon, a bindle of heroin, and a hypodermic kit," with the inmate refusing to provide a urine sample to test for controlled substances. *Id.* at 2. The Stacking Memorandum concludes that both the weapon and the controlled substance must be reported, as the two are "not related" and "[t]here is no nexus between these two items." *Id.* However, the hypodermic kit and the inmate's refusal to provide a urine sample are directly tied to the controlled substance charge and therefore should "become lesser included elements of th[at] charge." *Id.*

Similar to the Stacking Memorandum's exemplar, Petitioner's cell phone possession and alcohol possession charges are "not related" and have no "nexus." *Id.* Although both violations stemmed from the same search of Petitioner's cell, there is no connection between Petitioner's alleged possession of the cell phone and his alleged possession of the inmate-manufactured alcohol. Although the alcohol offense, as a Division C offense, was more serious than the cell phone offense, a Division D offense, the two offenses do not

---

[2] CDCR was known as the California Department of Corrections from 1951 until 2004, when it was renamed. *See California Department of Corrections and Rehabilitation*, WIKIPEDIA, *available at* https://en.wikipedia.org/wiki/California_Department_of_Corrections_and_Rehabilitation (last accessed Feb. 23, 2021).

represent an "escalation" resulting in the occurrence of "a more serious violation." *Id.* at 1. Rather, the two violations are separate offenses not otherwise tied to one another beyond the fact that they stemmed from the same cell search. Accordingly, the Court finds that, even if the "stacking" claim states a cognizable claim for habeas relief, it fails on the merits.

Accordingly, the Court **ADOPTS** the R&R's conclusion that the Petition fails to state a claim for federal habeas relief on the merits.

## II.     Remainder of the R&R

Petitioner does not object to the remainder of Magistrate Judge Butcher's R&R, including, *inter alia*, the R&R's conclusion that the Petition is not amenable to conversion to a Section 1983 action, *see* R&R at 7. Having found no clear error, the Court **ADOPTS** the remainder of Magistrate Judge Butcher's R&R.

## CERTIFICATE OF APPEALABILITY

When a district court enters a final order adverse to the applicant in a habeas proceeding, it must either issue or deny a certificate of appealability ("COA"). *See* Rule 11(a) of the Rules Governing Section 2254 Cases. A COA is required to appeal a final order in a habeas proceeding. 28 U.S.C. § 2253(c) (1)(A). A COA is appropriate only if the petitioner makes "a substantial showing of the denial of a constitutional right." *Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003). A "substantial showing" requires a demonstration that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Beaty v. Stewart*, 303 F.3d 975, 984 (9th Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court concludes that Petitioner has not met this standard and accordingly **DENIES** a COA.

## CONCLUSION

In light of the foregoing, the Court:

1. **SUSTAINS** in part and **OVERRULES** in part Petitioner's Objections (ECF No. 13);

2. **ADOPTS** the R&R's conclusions that the Petition is not cognizable in habeas, that Petitioner's due process claim fails on the merits, and that the Petition is not amenable

to conversion to a Section 1983 action (ECF No. 12);

    3.    **FINDS** that Petitioner's "stacking" claim also fails, both in stating a cognizable claim for habeas relief and on the merits;

    4.    **DENIES** the Petition (ECF No. 1);

    5.    **ORDERS** the Clerk of the Court to enter judgment in favor of Respondent and against Petitioner and close the file; and

    6.    **DENIES** a Certificate of Appealability.

**IT IS SO ORDERED.**

Dated: March 4, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge